# B. F. BROWN ET AL. v. JOHN DEVITT ET AL.

APPEAL BY PLAINTIFFS FROM THE COURT OF COMMON PLEAS
OF ARMSTRONG COUNTY.

Argued October 16, 1889—Decided February 10, 1890.
[To be reported.

1. A vendor may enforce the payment of purchase money on an executory agreement for the sale of land, by an action of ejectment against the vendee in possession, or his assignee; and such action may be maintained to enforce payment of any instalment of purchase money overdue when it is brought.

2. One who receives from a vendee an assignment of an executory contract of sale, in payment of a pre-existing indebtedness, stands on no higher footing than his assignor; " nothing is payment to enlarge the equitable estate of a vendee for the benefit of his creditors, which is not equally payment to enlarge it for the benefit of himself:" *Watson v. Willard*, 9 Pa. 89.

3. Where a contract for the sale of an oil-leasehold provided that the title should not pass until payment of a purchase money note, an assignee of the vendee's interest, knowing that the purchase money was unpaid, cannot defend against an ejectment to enforce it, upon a belief that its lien was lost by the substitution of new notes for the original and the vendor's release of the right to have the oil run to his credit.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 225 October Term 1889, Sup. Ct.; court below, No. 84 September Term 1888, C. P.

On June 20, 1888, B. F. Brown and N. F. Stanton brought ejectment against John Devitt and T. S. Fletcher for a tract of land containing ten acres, the præcipe for the writ stating that the action was brought to enforce the payment of $1,600 purchase money and interest thereon from October 7, 1887. Issue.

At the trial on March 21, 1889, the following facts were shown: On May 26, 1886, the plaintiffs took from Joseph Knox and others, an oil-lease for the term of fifteen years of the ten acres described in the writ of ejectment. Soon afterward they commenced operations upon the leasehold and completed one producing well. On April 28, 1887, they entered

into an article of agreement with John Devitt, one of the defendants, whereby they sold him said leasehold, the oil well thereon, and all the machinery and fixtures belonging to it, for the sum of $5,000 payable in instalments, the last of which, amounting to $2,000, was to mature in one year from the date of the agreement. The article recited that for each instalment of the purchase money Devitt had given his judgment note to the vendors, and contained the following stipulations:

" It is further agreed that the title of said described property shall not pass to said Devitt until the full amount of the purchase money is paid; and he, the party of the second part, shall have the privilege of paying said several amounts at any time before the same shall fall due at his option.

" It is also agreed that the oil produced from said oil well shall be run to the credit of the parties of the first part in the pipe lines, and the oil shall be credited to said Devitt on the last note of $2,000, until well No. 2 shall be put down; after which one half of all oil produced on said leasehold shall be run to the credit of said John Devitt, his heirs or assigns, and the other half shall be run to the credit of the parties of the first part, or their heirs or assigns."

On October 7, 1887, Brown and Stanton made an. agreement with Devitt by which they sold him two wells on the William Edmunds farm at $3,000, and he sold them two wells on the Robert Black farm at $4,000. The difference of $1,000 coming to Devitt on this transaction was applied to his indebtedness upon the purchase of the Knox lease, and, with payments previously made, extinguished all of the notes except the one for $2,000 maturing April 28, 1888, upon which Devitt was entitled to a credit of about $400 for oil that had been run into the pipe lines for the use of Brown and Stanton, in accordance with the agreement of April 28, 1887. Devitt then requested an extension of the time of payment of the balance of $1,600 remaining unpaid upon the $2,000 note, and Brown and Stanton agreed to surrender the note for $2,000, upon receiving two new notes for $800 each, one of them payable on April 28, 1888, the date at which the original note would have matured, and the other one year later. This arrangement was carried out, and Devitt thus became possessed of the two original purchase money notes. Brown and Stanton also gave to Devitt

an order to the pipe line company to run all the oil thereafter in the latter's name.    This order was in the following form :

" National Transit Co., United Pipe Lines Division.

" Have this day sold Brown & Stanton Well No. 1 on Joseph Knox farm, Perry township, Armstrong county, state of Pa., as below :

| Interest. | Name. | P. O. Address. |
|---|---|---|
| All W. I. | John Devitt. | Bruin, Pa. |
|  | T. K. 5089. |  |

" You will therefore transfer the same to his credit on your books."

On May 14, 1888, T. S. Fletcher, having a claim against Devitt for $225 borrowed money, and being his security upon a note in Bank for $1,000, took from Devitt, in payment of that indebtedness, an assignment of the Knox lease indorsed upon a copy of the agreement between Brown and Stanton and Devitt.    The assignment, executed by Devitt under seal, was in the following words :

" For value received I hereby assign to T. S. Fletcher all my right, title, interest and claim of, in and to the property described in the within copy of agreement, to have and to hold the same subject to the terms thereof to his heirs and assigns as well as to himself."

Before taking this assignment, Fletcher was shown the agreement and the original purchase money notes by Devitt, went to the pipe line office and ascertained that the oil from the Knox leasehold was all being run in Devitt's name, and consulted an attorney.    He then took the assignment believing that there were no liens upon the leasehold.    Devitt had told him of the existence of the two $800 notes and informed him they were unpaid, but said he did not think they were a lien upon the property.    The first of these notes having matured and not having been paid, the plaintiffs brought this action.

At the conclusion of the testimony the court NEALE, P. J., charged the jury in part as follows :

You will observe that the title to the land remained in the original parties, Brown and Stanton, under this article of agreement, and was to remain with them ; that is, the title to

the leasehold, until all the purchase money would be paid; therefore, if any part of the actual purchase money remained unpaid, the title still remained in these original parties under their agreement. The second party, Devitt, on May 14, 1888, sold his interest in this land to this other party Fletcher. If he did not have title in May, 1888, the time of the sale to Fletcher, when all the money, according to their original contract or agreement, was due, he could not sell or convey what he did not have. And if nothing else had happened, there would be a perfect right on the part of the present plaintiffs to bring their action of ejectment to recover under their title, because their money was then due. . . . . .

—The court then reviewed the testimony showing the facts occurring on October 7, 1887, at the time when the new notes were substituted, and proceeded:

It is claimed on the part of this defendant Fletcher that that was an entire change of the transaction. Devitt had the notes delivered up to him, and had given $400 in oil in regard to that last note, and had given his other two notes for $800 each, making the balance of $1,600. Now, it is to be submitted to you, and that is the reason we are particular about it, it is to be submitted to you, whether that transaction was a payment of this $2,000 note by the giving up of the note on the part of Brown and Stanton to Devitt and the accepting of the other two notes of Devitt at different dates coming due at different times than the $2,000 note; one on April 7, 1888, when the original note would become due on the 28th of April, and the other running an entire year, that is until April 7, 1889. Now, was that new transaction a payment of this $2,000 note? That has to be determined; because we say to you as a question of law that the mere giving of a note for an indebtedness does not pay the indebtedness, unless it is the intention of the parties that it should pay the indebtedness, or cancel it. Did they by that transaction; did Brown and Stanton, or did Devitt, between themselves, intend by the surrender of the $2,000 note and the accepting of the two $800 notes and the crediting of the $400 on the $2,000 note, did they intend that that should be a payment of that $2,000 note? That is for the jury to determine.

If you find that that was the intention and that the $2,000 note

by that transaction was paid, that is an end of this suit; because
if the debt has been paid, no difference whether it has been
paid in money or otherwise, if there has been a payment of
that note, then there can be no recovery in this suit, and the
remedy must be upon these two notes.   They have a right to
proceed upon these two notes and collect them.   They are
judgment notes and might be entered and an execution issued
upon them.   If it was not the intent between the parties, and
that you have to infer from the acts of the parties; you have
to determine whether it was a payment or not by the acts of
the parties.   It will be for you to say whether that was a pay-
ment or not.

They have an outside party, so far as Fletcher, the present
defendant, is concerned.   A man cannot take advantage of an
innocent party, if he by his own acts makes it possible that
another man may be deceived.   If he misleads by his own acts
he cannot take advantage of his own wrong and let the other
innocent party be injured in his interests or in his rights.   Did
these parties do all that they should have done, so far as Mr.
Fletcher is concerned?   They surrendered these notes, they
went then to the pipe line company, and they transferred or
delivered over to Devitt all the oil or all the right to the oil ·
that they had reserved in their original contract.   They were
to have that oil run to their own credit.   Mr. Fletcher had a
right to see that on the pipe line books, and to expect that that
oil would be run in the name of Brown and Stanton.   He had
a right to expect that it would be credited from time to time
on the notes, but on the 14th of May when he got the wells,
by that time there had been a transfer made on the books of the
pipe line company, and the wells had been transferred and their
product had been transferred over to Devitt.   Now, then,
Devitt comes to Fletcher with these notes surrendered to him;
and with the transfer, and we do not know whether he did or
did not, but it was transferred in the pipe line company; I
don't remember whether the evidence shows that he did or did
not; the jury will remember; but on the 14th or before the  ·
14th of May, 1888, this oil had been transferred in the pipe lines
to Devitt, and Brown and Stanton had done that.   Now, was
that an act that was corroborative of the fact that this note
had been paid; not paid in money, but paid in what these
parties, Brown and Stanton accepted as money ?

Charge of Court below.

Then you come to the next matter. · Was this action ripe on June 20, 1888, when this suit was brought, and had they a right to the possession of this land? They had accepted a note that run on till April 7, 1889. Had they a right to the possession of the land, even if this is not a payment of the $2,000 note.? Did the plaintiffs have a right to the possession of the land until this note running until April 7, 1889, would be paid? That will be for the jury under all the evidence in the case. We submit to you, gentlemen, the whole case as a question of fact, under the instructions that we have given you as to the law, bearing upon the various facts that have been adduced in the evidence. . . . .

The defendants' counsel have requested us to charge you as follows:

1. That under the evidence in the cause the plaintiff had no right to the possession of the land on June 20, 1888, and cannot maintain this action.

Answer: Affirmed, if the jury believe under all the evidence that the plaintiffs had not the right of possession at the time the suit was brought. We have instructed you fully, in one part of our charge, gentlemen, on that subject.[2]

2. That the notes of April 28, 1887, having been delivered up to John Devitt, the maker, on October 7, 1887, this action cannot be maintained to enforce their payment.

Answer: We say to you, gentlemen, that if you believe that these notes gave a further extension of the time of the payment of the purchase money on that leasehold, and that these notes stood for the note of $2,000 and there was thereby given an extension of time for the payment, then the suit was brought prematurely, because the last of these notes has not matured and the right of action would not accrue.[3]

3. That Brown and Stanton having on October 14, 1887, made an absolute sale of all their working interest in the well on the property in dispute, they cannot maintain this action.

Answer: We will affirm that, if you find that Brown and Stanton had sold all their interest in this. That is for the jury. They could not maintain an action for what they did not have title to. They must have title when they bring the action. If they had not the title to this property, they could not maintain this suit.[4]

4. That from the undisputed evidence in this case, the notes mentioned in the article of agreement of April 28, 1887, having been delivered up to John Devitt, the vendee, on October 7, 1887, an equitable action of ejectment cannot be maintained to enforce the payment of any part of the purchase money.

Answer: That point is refused.

5. That Brown and Stanton having delivered up the notes of April 28, 1887, to Devitt and having transferred to him the production of the oil wells and thereby induced Fletcher to believe that Devitt was the owner of said property, and Fletcher having parted with his money under that belief, the plaintiffs in this case are estopped from claiming they have a lien on said property.

Answer: We refuse to affirm this point as a question of law, but submit it to the jury as a question of fact.[5]

6. That if the jury believe from the evidence that Brown and Stanton put papers in the hands of Devitt by which Fletcher, an innocent party, was deceived, the loss must fall on them and they cannot recover in this suit.

Answer: That point is affirmed.[6]

. That on October 7, 1887, Brown and Stanton having made a new bargain and settlement with Devitt, whereby he sold them two wells on Robert Black farm, and they sold him two wells on Edmunds farm, that the notes of April 28, 1887, were delivered up to Devitt and he executed new notes, wherein the time of payment was extended and one of said notes is not yet due, the plaintiff cannot recover in this action.

Answer: We refuse to affirm this point as a question of law, but submit it to the jury as a question of fact.[7]

8. Under the agreement of April 28, 1887, the production of the wells was to be applied to the payment of the notes, and the value of the production being in excess of the note not due, the plaintiff cannot recover.

Answer: That is affirmed if the jury believe that to be the fact as stated in the point.[8]

The verdict of the jury was in favor of the defendants. A rule for a new trial having been discharged, without opinion filed, judgment was entered on the verdict, when the plaintiffs took this appeal, specifying that the court erred:

1. In not charging that there was no evidence of a new contract and that the verdict should be for the plaintiffs.

2–8. In the answers to defendants' points.[2 to 8]

*Mr. John M. Greer* (with him *Mr. E. Ralston* and *Mr. H. L. Golden*), for the appellants :

1. Under the contract between the plaintiffs and Devitt, the payment of the entire purchase money was a condition precedent to the passage of the title. Devitt, or his assignee, cannot hold the property without complying with the contract, and upon default in the payment of the purchase money the plaintiffs had a right to maintain ejectment : Mitchell v. De Roche, 1 Y. 12 ; Marlin v. Willink, 7 S. & R. 296 ; Campbell v. Gratz, 6 Binn. 117 ; Kauffelt v. Bower, 7 S. & R. 75 ; Moyer v. Garrett, 96 Pa. 376. It was not necessary that both the unpaid purchase money notes should be overdue at the commencement of the suit ; ejectment may even be maintained to enforce the payment of overdue interest on unmatured instalments of purchase money : Moyer v. Garrett, supra.

2. The giving up of the note for $2,000 and the taking in its stead of two notes for $800 each, did not operate as payment unless so intended by the parties : Kemmerer's App., 102 Pa. 558 ; Hart v. Boller, 15 S. & R. 162 ; Brown v. Scott, 51 Pa. 357 ; Setzer v. Coleman, 32 Pa. 493. There is no proof of any agreement or intention that it should so operate. As Fletcher did not advance any money to Devitt for the lease, but took it for a pre-existing debt, he is not an innocent purchaser : Ashton's App., 73 Pa. 162 ; Kirkpatrick v. Muirhead, 16 Pa. 123 ; Petrie v. Clark, 11 S. & R. 377. He had notice, however, from the copy of the agreement on the back of which the assignment to him was written, to the terms and conditions of which that assignment was expressly made subject, that the title was to remain in the plaintiffs until all the purchase money was paid, and he had actual notice from Devitt that $1,600 of it remained unpaid. The change in the notes and in the running of the oil, therefore, would not and could not deceive him.

3. In submitting to the jury, in the answer to the defendant's third point, whether Brown and Stanton had made an absolute sale in October, 1887, of their entire interest in the lease, the court was in error. The agreement positively provided that no

title should pass until the entire purchase money was paid in full. Whether it was an absolute sale was not a question for the jury, but one which the court should have settled by refusing the point and instructing the jury in accordance with the language of the contract. From the papers and proofs in the case, the plaintiffs should have recovered a verdict, to be released upon the payment of the $800 due April 28, 1888, with its interest. That the jury did not render such a verdict is due, we believe, to the fact that the answers to the defendants' points confused or misled them. They could easily be confused by the manner in which the points were answered.

*Mr. W. D. Patton* (with him *Mr. H. N. Snyder*), for the appellees:

1. The first assignment of error is sufficiently answered by saying that the omission to charge upon a particular point as to which no request for instruction was made, is not ground of error: Menges v. Muncy Creek Tp., 1 Penny. 179; Fox v. Fox, 96 Pa. 60. Under the agreement of April 28, 18 57, the failure to pay the purchase money did not give Brown and Stanton the right of possession. The agreement gave them only the right to have the oil run to their credit, to be applied by them on the $2,000 note. The whole working interest in the lease having been transferred to Devitt in October, 1887, the plaintiffs, at the time the suit was brought, were entitled neither to the possession nor to the oil.

2. The transaction of October 7, 1887, was a clear case of novation, and the plaintiffs, after the purchase money notes mentioned in the article of agreement had been paid and delivered up to the vendee, could not maintain ejectment to enforce the payment of other notes, given at a date subsequent to the article, in a different transaction, upon a new consideration, for a different amount, and running for a longer time. As in the case of a married woman's purchase money note, the plaintiffs can enforce payment only if the purchase and the note constitute one and the same transaction: Christner v. Hochstetler, 109 Pa. 27. Delivery of a bond to the obligee with intent to discharge the debt will have that effect: Licey v. Licey, 7 Pa. 251; Manuel v. Railroad Co., 2 Pa. 198.

3. It is true that one who takes a security for a pre-existing

debt is not a purchaser for value. But in an equitable proceed-
ing, like this, substantial justice should be done, and the plaint-
iffs must have done nothing which would render their claim
inequitable : Porter v. Dougherty, 25 Pa. 405; Churcher v.
Guernsey, 39 Pa. 84; Ong v. Campbell, 6 W. 392. The plaintiffs
delivered up the notes of April 28, 1887, to Devitt. Fletcher
found all the notes, upon payment of which the title was to
pass under the article, in Devitt's possession. He also found
that the oil which was to have been run to the plaintiffs' credit
till the notes were paid, was being run to Devitt's credit. He
was thus deceived by the plaintiffs' conduct and led to take the
lease and satisfy his indebtedness against Devitt. It is there-
fore inequitable to sustain this action against Fletcher.

OPINION, MR. JUSTICE McCOLLUM:

This was an action of ejectment, brought to enforce payment
of the purchase money due on an agreement for the sale of an
interest in ten acres of land under an oil lease. In this agree-
ment the plaintiffs were the vendors, and defendant Devitt,
under whom defendant Fletcher claims title, was the vendee.
The purchase money was $5,000, payable in instalments, for
which judgment notes of the vendee were given. The agree-
ment provided that the title to the property should not pass to
the vendee until the full amount of the purchase money was
paid. It also contained a provision that the oil produced from
the well on the premises should be run in the pipe lines to the
credit of the vendors, and that the vendee should receive credit for
it on the last instalment. On October 7, 1887, it was ascertained
by the parties that the vendee was entitled to a credit of $400
for the oil so run, and, applying this on the last instalment, there
was a balance of $1,600 of the purchase money unpaid. This
balance, by the terms of the contract, was payable on April 28,
1888. The vendee requested the vendors to extend payment of
this balance one year, and it was finally agreed between them
that one half of it should be paid in six months, and the remain-
der in eighteen months. The $2,000 note, which had been given
for the last instalment, was then surrendered, and two notes of
the vendee of $800 each, payable according to the agreement
of extension, were substituted for it. The vendors then gave
to the vendee an order on the pipe line company to allow all the

. oil to be run in his name. By this arrangement the vendors relinquished their right to have the oil run in the pipe lines to their credit, and extended the payment of $800 one year. In all other respects the agreement remained in force as written. It is not claimed by either party to this transaction that there was any agreement by the vendors to accept the new notes as payment, or to release the leasehold from the lien for purchase money.

On May 14, 1888, Devitt assigned his interest in the land to Fletcher in payment of $1,250 which he then owed him, and subject to the terms of his written agreement with Brown and Stanton. It is contended that if Fletcher was induced to purchase the property by an honest belief, derived from the possession of the original notes by Devitt, and from the order given by Brown and Stanton on the pipe line company, that the purchase money was in fact paid, this suit cannot be maintained. It must be conceded, however, that if he knew the purchase money was not paid, his belief that the lien for it was destroyed by the substitution of the new notes, and the order on the pipe line company, would not avail him as a defence to the action. A party who has knowledge of the facts is affected with notice of their legal consequences, and his misapprehension of these affords him no protection. But Fletcher was a creditor of Devitt, and received the assignment of the contract on account of his claim. He stands upon no higher footing than his assignor. In the language of Chief Justice GIBSON in Watson v. Willard, 9 Pa. 89: "Nothing is payment to enlarge the equitable estate of a vendee for the benefit of his creditors, which is not equally payment to enlarge it for the benefit of himself."

The action of ejectment is an appropriate remedy by a vendor against a vendee, or his assignee, to enforce payment of the purchase money due on an executory agreement for the sale of land. It will lie where there is default in payment of the interest or an instalment of the principal. The vendor need not wait until the last instalment of the principal falls due before he brings his action, but may proceed on the first default. It follows from what has been said, that this action may be maintained to enforce payment of the purchase money due and payable at the time it was brought.

There was nothing on which to base a finding that any oil

was run to the credit of the vendors which was not applied on the purchase money by their agreement with their vendee on the 7th of October, 1887. The plaintiffs sold the leasehold to defendant Devitt on April 28, 1887, by the written agreement which was the basis of this action; and there is no evidence of any modification of it, except in the particulars hereinbefore mentioned. It is not claimed that anything passed between the parties to this agreement with reference to it, or the land embraced in it, after October 7, 1887. It was therefore error to allow the jury to find that the plaintiffs had sold their interest in the property subsequent to the date of the written contract.

It is a sufficient answer to the first specification that the court was not asked to instruct the jury that there was no evidence of a new contract. The first specification is dismissed, and the remaining specifications are sustained.

> Judgment reversed, and venire facias de novo awarded.